IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GOOGLE, INC., | NO. 5:10-cv-04264 EJD (HRL) |
| Plaintiff(s),<br>v. | **ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |
| OMAR JACKMAN, et. al., | [Docket Item Nos. 44, 53] |
| Defendant(s). | |

Presently before the Court is Plaintiff Google Inc.'s ("Google") Motion for Default Judgment ("Motion") against Defendants Gina Wyant, Gregory Gavin and Amanda Odell (collectively, "Defendants"). To date, Defendants have not filed an opposition or otherwise appeared in this proceeding. Pursuant to Local Rule 7-1(b), the court determined this motion was suitable for decision without oral argument and therefore vacated the previously-scheduled hearing. Having reviewed Google's pleadings and the applicable legal authorities, the Motion will be granted.[1]

### I. FACTUAL AND PROCEDURAL BACKGROUND

On September 21, 2010, Google initiated this action by filing a Complaint against defendants Omar Jackman and "John Doe" Simon. See Docket Item No. 1. Thereafter, Google filed a First Amended Complaint ("FAC") adding Wyant, Gavin, Odell and Joey Patron as defendants. See Docket Item No. 16. The following facts are taken largely from the FAC, as noted.

Google is a Delaware corporation with its principal place of business in Mountain View,

---

[1] This disposition is not intended for publication in the official reports.

1
Case No. 5:10-cv-04264 EJD (HRL)
ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (EJDLC1)

California. FAC at ¶ 1. Google operates a program called AdWords, an online advertising service, which places ads on pages containing Google search results. Id. at ¶ 12. Potential advertisers bid on search keywords to have their advertisement presented on a search page. Id. Due to its size, AdWords is mostly automated and self-service. Id.

In order to participate in the AdWords program, a potential advertiser must open an AdWords account. Id. at ¶ 13. An account is created online and requires the advertiser to agree to the terms and conditions that govern an account with AdWords, which are contained in the Advertising Program Terms ("Ad Terms"). Id. at ¶ 13; Decl. of Heather Cain in Support of Motion for Default Judgment ("Cain Decl."), at Ex. A. The Ad Terms prohibit advertisers from using AdWords to advertise illegal products or to engage in illegal business practices using AdWords. Id. More specifically, Google prohibits the promotion of anabolic steroid products, and only allows online pharmacies to advertise using AdWords if they have been verified by the National Association of Boards of Pharmacy's Verified Internet Pharmacy Practice Sites ("VIPPS") program. FAC at ¶ 14.

Defendants have used AdWords to advertise on behalf of online pharmacies that are not registered with VIPPS. Id. at ¶ 19. Specific Defendants, Gavin registered the domain name www.swesspharma.com. Id. Defendants then opened a series of AdWords accounts to advertise www.swesspharma.com and promote Dianabol, an anabolic steroid. Id. at ¶¶ 19, 24. In order to evade detection by Google's automatic monitoring system, Defendants misspelled Dianabol on the advertisement that ran over the AdWords network. Id. at ¶ 24. Also, Defendants continued to open accounts, possibly using different names and false contact information, even after their original accounts were suspended. Id. at ¶ 26. These practices are in violation of the Ad Terms. Id.

Defendants ads ran for a short time on the AdWords network, but they were eventually removed through Google's "sweeps," a process used to identify and inspect ads that originally passed automated review but may actually violate Google's policies. Id. at ¶ 25.

The FAC contains one cause of action for breach of contract against all defendants. See Docket Item No. 16. Jackman waived service of the FAC (see Docket Item No. 22), and eventually agreed to the entry of a permanent injunction against him. See Docket Item No. 46. Google then

dismissed defendants "John Doe" Simon and Joey Patron. See Docket Item No. 45. Defendants Wyant, Gavin, and Odell failed to respond after being served with the action. The clerk entered their defaults on February 2nd and February 9, 2011. See Docket Item Nos. 35, 40, 41. The instant Motion followed on March 31, 2011, (see Docket Item No. 44) and was re-noticed on May 6, 2011. See Docket Item No. 53.

## II.   DISCUSSION

### A.   Legal Standard

Pursuant to Federal Rule of Civil Procedure 55(b), the court may enter default judgment against a defendant who has failed to plead or otherwise defend an action. "The district court's decision whether to enter default judgment is a discretionary one." Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). The Ninth Circuit has provided seven factors for consideration by the district court in exercising its discretion to enter default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect and; (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). When assessing these factors, all factual allegations in the complaint are taken as true, except those with regard to damages. Televideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

### B.   Jurisdiction

Courts have an affirmative duty to examine their own jurisdiction - both subject matter jurisdiction and personal jurisdiction - when entry of judgment is sought against a party in default. In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999). The court does so below.

#### 1.   Subject Matter Jurisdiction

District courts have original jurisdiction to hear civil actions where the matter involves citizens of different states, and the amount in controversy exceeds the sum or value of $ 75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). Here, there is complete diversity between Google and each of the Defendants. FAC at ¶¶ 1-7. Also, the amount in controversy exceeds

$75,000. FAC at ¶ 9. This court may therefore exercise subject matter jurisdiction over this action.

### 2.  Personal Jurisdiction

As the party seeking to invoke the court's jurisdiction, Google must bear the burden of establishing personal jurisdiction over Defendants. See Scott v. Breeland, 792 F.2d 925, 927 (9th Cir. 1986). In the Motion, Google contends Defendants consented to personal jurisdiction in this forum when they agreed to the Ad Terms. FAC at ¶ 10; Cain Decl. at Ex. A. Paragraph 9 of the Ad Terms includes the following forum selection clause: "All claims arising out of or relating to this Agreement or the Google program(s) shall be litigated exclusively in the federal or state courts of Santa Clara County, California, USA, and Google and customer consent to personal jurisdiction in those courts." Cain Decl. at Ex. A.

Forum selection clauses, like the one cited above, are presumptively valid. M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972). "[T]he party seeking to avoid a forum selection clause bears a 'heavy burden' to establish a ground upon which" the court may find the clause unenforceable. Doe 1 v. AOL LLC, 552 F.3d 1077, 1083 (9th Cir. 2009). The Ninth Circuit has recognized that the acceptance of a forum selection clause constitutes consent to personal jurisdiction in the identified forum. SEC v. Ross, 504 F.3d 1130, 1149 (9th Cir. 2007) (citing Nat'l Equip. Rental, Ltd. v. Szukhent, 375 U.S. 311, 315-16 (1964); Dow Chem. Co. v. Calderon, 422 F.3d 827, 831 (9th Cir. 2005)). Here, Plaintiff has established that in order to participate in the AdWords program, Defendants were required to agree to the Ad Terms and to the forum selection clause contained in Paragraph 9. The Ad Terms appear on the computer screen during the account activation process, and an AdWords account does not become functional until the advertiser specifically acknowledges consent to the Ad Terms. Cain Decl. at ¶ 4. Due to their non-appearance, Defendants have not raised a challenge to the clause, and the court does not independently consider the clause unreasonable or unfair. Thus, the presumption validity prevails here. See M/S Bremen, 407 U.S. at 10. Accordingly, the court finds it may properly exercise personal jurisdiction over Defendants due to their consent to the Ad Terms.

### 3.  Service of Process

The court must assess whether the Defendants were properly served with notice of this

1  action. Plaintiff served the Summons and FAC on Defendant Wyant by delivering the documents to
2  her husband at their place of residence in Ohio. See Docket Item No. 24. The Summons and FAC
3  were served on Defendants Gavin and Odell through personal delivery to Gavin at their residence in
4  Tennessee. See Docket Item Nos. 33, 34. The court finds Plaintiffs effected service of process in
5  conformance with subsections (e)(2)(A) and (e)(2)(B) of Federal Rule of Civil Procedure 4.

      **C.**     **The Eitel Factors**

Having found the existence of jurisdiction and proper notice, the court now turns to the Eitel factors.

      **1.**     **Prejudice to Google**

Under the first factor, the court must examine whether Google will be prejudiced should the court deny the request for default judgment. Having done so, the court agrees with Google that denial of the injunctive relief requested will leave Google with no means of preventing Defendants from infringing Google's rights in the future, especially since these particular individuals have serially opened multiple accounts in order to circumvent Google's security measures. Cain Decl. at ¶ 6. Because failure to grant the Motion would cause substantial harm to Google, this factor weighs in favor of entering default judgment.

      **2.**     **Sufficiency of Google's FAC and Likelihood of Success**

For the second and third factors, the court must determine whether Google's FAC contains sufficient facts to establish and succeed on its claim.

The FAC contains only one cause of action for breach of contract. In order to plead and prove a successful claim for breach of contract in California, a plaintiff must show: (1) the existence of a contract; (2) plaintiff's performance of excuse for non-performance; (3) defendant's breach; and (4) damage to plaintiff resulting therefrom. Careau & Co. v. Sec. Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1388 (1990). Here, Google has met its burden to sufficiently plead each of these elements. Taking each in turn, Google alleges that a valid contract existed between it and the Defendants in the form of the Ad Terms, which Defendants accepted by activating an AdWords account. FAC at ¶¶ 13, 28. The Ad Terms require each advertiser to comply with its provisions, and prohibit the promotion of on-line pharmacies and prescription drugs except under certain

circumstances. Id. at ¶¶ 13, 14. Only pharmacies verified by VIPPS may target the United States using the AdWords program, and the promotion of anabolic steroids is prohibited altogether. Id. at ¶ 14. Google performed by offering and allowing the posting of Defendant's ads through the AdWords program. Id. at ¶¶ 19, 21, 24. Defendants breached the Ad Terms by using the AdWords program to advertise prescription drugs and illicit pharmaceuticals, including anabolic steroids, to customers in the United States despite the fact Defendants have not been verified by the VIPPS, and despite the unequivocal prohibition of anabolic steroids. Id. at ¶¶ 21, 24. Google has been damaged as a direct result of Defendants' activities such that it has been forced to implement systems designed to prevent, detect, and take action against Defendants. Id. at ¶ 31. Taking these allegations as true, the court finds Google has established a claim for breach of contract. This factor therefore weighs in favor of default judgment.

### 3. Sum of Money at Stake and Possibility of Factual Dispute

The fourth and fifth Eitel factors require the court to examine the amount of money at stake and the possibility of dispute concerning material facts, respectively. According to the Motion, Google is seeking only injunctive relief by way of default judgment. Because money is not at stake, the fourth factor favors entry of judgment. Moreover, Google has set forth sufficient and specific allegations to support its claim for breach of contract. It is unlikely Defendants could dispute these facts, even if they appeared in this matter. The fifth factor, therefore, also weighs in favor of Google's requested default judgment.

### 4. Possibility of Excusable Neglect

The court must examine the possibility that Defendants' default is due to excusable neglect under the sixth Eitel factor. Here, Defendants were each served with notice of this proceeding and, as already noted, did not respond or otherwise appear. There is no evidence, or even suggestion, that their failure to participate is due to anything other than informed inaction. As such, this factor favors entry of default judgment.

### 5. Policy Favoring Decisions on the Merits

The seventh and final Eitel factor requires observation of the policy favoring the determination of cases on their merits rather than through default judgment. Eitel, 782 F.2d at 1472.

The court recognizes that default judgments are generally disfavored. See Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir. 1985). However, the Federal Rules of Civil Procedure provide for entry of default in situations such as this: where a decision on the merits is either impracticable or impossible. See Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 501 (C.D. Cal. 2003). Defendants' complete failure to respond in any way renders a decision on the merits both impracticable and impossible. Thus, this factor weighs in favor of default judgment.

In sum, all of the factors designated for review under Eitel weigh in favor of entry of default judgment against Defendants.

### D. Remedies

Having determined that default judgment may be entered, the court must now determine the appropriate remedy. See 3A Entm't Ltd. v. Constant Entm't, Inc., No. C 08-1274 JW, 2009 WL 248261, 2009 U.S. Dist. LEXIS 11042, at *9-10 (N.D. Cal. Jan 30, 2009). Although they requested monetary damages in their FAC, Google only seeks entry of a permanent injunction in the Motion. Thus, the court examines only injunctive relief here.

In general, a plaintiff that establishes breach of contract is entitled to recover the "amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." Cal. Civ. Code § 3300. However, injunctive relief may be also appropriate in a claim for breach of contract. Smith v. Mendonsa, 108 Cal. App. 2d 540, 544, 238 P.2d 1039 (1952). "The basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." Lucasfilm Ltd. v. Media Market Gp., Ltd., 182 F. Supp. 2d 897, 899 (N.D. Cal. 2002) (internal quotations omitted).

Here, the court finds that failure to issue an permanent injunction will expose Google to continuing irreparable injury. Without such an injunction, Google will need to expend further resources to discover and eliminate Defendants' improper advertising. Defendants have shown an ability to evade Google's automatic monitoring system in the past by opening accounts under different names and using creative mis-spellings in their advertisements. FAC at ¶¶ 15, 19, 24, 26. Defendants' violations of the Ad Terms will persist unless they are prohibited from doing so.

7
Case No. 5:10-cv-04264 EJD (HRL)
ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (EJDLC1)

Moreover, other legal remedies, such as monetary damages, are inadequate to eliminate the problem described above. Thus, Google has shown it is entitled to injunctive relief.

The remaining question is the scope of the injunction. In the FAC, Google prayed for an injunction "barring defendants and their agents from advertising or attempting to advertise through Google's AdWords advertising network, without regard to contact name, address, or email address and without regard to what URL or website is advertised." FAC at § VI(A). They now request a more expansive version in the Motion:

> Defendants Wyant, Gavin, and Odell, and their agents, representatives, successors, assigns, and any persons acting in active concert or participation with them (the "Enjoined Parties") are immediately and permanently enjoined from:
>
> (a) Opening an account with Google (whether in the Enjoined Parties' name or using different names or aliases);
>
> (b) Using any Google web-based application or service provided for a fee, whether existing now or created in the future; and
>
> (c) Using any Google web-based application or service - whether or not provided for a fee, and whether existing now or created in the future - that requires a log-in or account, including but not limited to AdWords, AdSense, Analytics, and Gmail.

Generally, "an injunction must be narrowly tailored to remedy only the specific harms shown by the plaintiffs rather than to enjoin all possible breaches of the law." Iconix, Inc. v. Tokuda, 457 F. Supp. 2d 969, 998-1002 (N.D. Cal. 2006) (citing Price v. City of Stockton, 390 F.3d 1105, 1117 (9th Cir. 2004)). Moreover, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. Proc. 54(c). As explained above, Google has only shown irreparable injury arising out of Defendants' improper use of the AdWords program - not from their use of *any* Google-based program. The corresponding injunction issued must therefore be narrowly tailored to that demonstrated injury. The injunction proposed by Google is not so narrowly tailored since it appears Google is attempting to prevent Defendants from violating the terms and conditions of all Google programs. Additionally, the language proposed by Google is much more expansive than the injunction described in the FAC. It would be unfair to Defendants to issue such

an overbroad injunction based only on the notice they received through the FAC.[2]

Google offers little argument in the Motion to support their proposed injunction despite these fairly obvious issues. That being the case, the court finds no compelling reason to adopt such an overbroad order. The court will issue an injunction as requested by Google, but with terms which comport with the scope of the harm as well as the notice provided to Defendants. The specific injunction follows below.

### III.  ORDER

Based on the foregoing:

1. Google's Motion for Default Judgment is GRANTED against Defendants Gina Wyant, Gregory Gavin and Amanda Odell;

2. Google's request for a permanent injunction is also GRANTED consistent with the following language:

> Defendants Gina Wyant, Gregory Gavin and Amanda Odell, and their agents, representatives, successors, assigns, and any persons in active concert or participation with them are immediately and permanently enjoined from advertising or attempting to advertise through Google's AdWords advertising network, without regard to contact name, address, or email address and without regard to what URL or website is advertised.

3. Since this Order and ensuing Judgment effectively resolve this case against all remaining defendants, the Clerk shall close this file upon entry of Judgment.

**IT IS SO ORDERED.**

Dated: July 28, 2011

                              EDWARD J. DAVILA
                              United States District Judge

---

[2] The fact that Google served Defendants with the Motion and proposed injunction on July 14, 2011 - only 8 days before the scheduled hearing - does not cure the issue of deficient notice. Indeed, this case is distinguishable from those which have awarded more in the default judgment than the amount requested in the complaint. See, e.g., Stafford v. Jankowski, 338 F. Supp. 2d 1225, 1228-29 (awarding more in default judgment than the amount demanded in the complaint when the defendant was served with motion for default judgment after he appeared in the action but was uncooperative with subsequent proceedings). In any event, the court would still find that Google's proposed injunction is not narrowly tailored to the harm, even if Defendants had received timely notice of the Motion.

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Rebecca S. Engrav rengrav@perkinscoie.com
Albert Gidari, Jr AGidari@perkinscoie.com
Joshua A. Reiten jreiten@perkinscoie.com
Bobbie Jean Wilson BWilson@perkinscoie.com

**Dated:  July 28, 2011**                                **Richard W. Wieking, Clerk**

                                                          **By:        /s/ EJD Chambers**
                                                          **Elizabeth Garcia**
                                                          **Courtroom Deputy**